NOTICE

Decision filed 01/03/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 170055-U

NO. 5-17-0055

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | Nos. 06-CF-1612 & |
| | ) | 07-CF-415 |
| | ) | |
| TIFFANY HALL, | ) | Honorable |
| | ) | Zina R. Cruse, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Cates and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We reverse the dismissal, at the second stage of proceedings, of the defendant's amended petition for postconviction relief, and remand to the circuit court with directions to allow the defendant the opportunity to replead the postconviction petition with the assistance of new counsel, because the defendant did not receive the requisite reasonable level of assistance from her postconviction counsel.

¶ 2    The defendant, Tiffany Hall, appeals the dismissal, at the second stage of proceedings in the circuit court of St. Clair County, of her amended petition for postconviction relief. For the following reasons, we reverse the dismissal, and remand to the circuit court with directions to allow the defendant the opportunity to replead the postconviction petition with the assistance of new counsel.

1

I. BACKGROUND

¶ 4    The following facts are derived from the record on appeal. Many of them were included in this court's previous order in this case, which was issued in appellate case number 5-13-0046 (*People v. Hall*, 2014 IL App (5th) 130046-U). On June 9, 2008, before the Honorable Milton S. Wharton, the defendant entered pleas of guilty to five charges: three counts of first degree murder in case number 07-CF-415, and one count of first degree murder and one count of intentional homicide of an unborn child in case number 06-CF-1612. The State explained that in exchange for the pleas of guilty, the State had agreed to withdraw its notice of intent to seek the death penalty, which at that time was potentially available in Illinois as a penalty. The parties agreed that because there were multiple decedents, the minimum sentence the court could impose following conviction on the first degree murder counts was mandatory life in prison without the possibility of parole. Judge Wharton then inquired, as he had each previous time the defendant appeared before him, as to how the defendant was being treated at the St. Clair County jail and as to her level of satisfaction with the representation of her by her attorneys. The defendant did not voice any concerns with regard to either matter. Judge Wharton then admonished the defendant with regard to the charges against her and the penalties she faced. Following that, the State presented its factual basis in support of the five charges, to which the defendant stipulated.

¶ 5    After giving additional admonishments regarding the defendant's rights, Judge Wharton inquired of the defendant's two trial attorneys whether there had "been anything that might have created a doubt in your mind as to her fitness to enter a plea of guilty in this case?" One of her attorneys replied in the negative, and added that psychologist Dr. Daniel J. Cuneo had been appointed "to conduct examinations as to both sanity as well as fitness." The attorney noted that the record contained Dr. Cuneo's report, and that "not only by way of that documentation, but by way of subsequent analysis, the independent experts from Chicago, we have confirmed that in

point of fact she was then and is now and has been throughout this process both fit and sane," and that she was fit to enter a plea of guilty on that date. As this court noted in our previous order, Dr. Cuneo's report is included in the record on appeal, and does not provide any information about the defendant's sanity at the time of the murders she allegedly committed, instead limiting itself, by the plain and explicit language of its first sentence, to "establishing an opinion as to [the defendant's] fitness to stand trial." *People v. Hall*, 2014 IL App (5th) 130046-U, ¶ 5. The penultimate sentence of the report reiterates the limited scope of Dr. Cuneo's report, stating Dr. Cuneo's opinion that the defendant "is presently fit to stand trial" and offering not a word about the defendant's sanity at the time of the offenses.

¶ 6      Still more admonishments from Judge Wharton followed, and then the defendant waived her right to a presentence investigation. With regard to her prior criminal history, the State conceded that the defendant had "no significant criminal history, certainly no felony criminal history." The defendant's attorney then represented to Judge Wharton that "in mitigation," he would note that "while the reports came back indicating that she was both fit to stand trial and that there were no legal defenses involving insanity, we do believe *** there are some issues that not only involve mental health issues," but also the limited intellectual functioning of the defendant. Judge Wharton accepted the defendant's pleas of guilty and sentenced her to four concurrent life sentences on the first degree murder charges, to be served concurrently with a 60-year sentence on the intentional homicide of an unborn child charge.

¶ 7      On September 19, 2008, the defendant filed an untimely motion to withdraw her guilty plea, which was dismissed by the trial court. On November 13, 2012, the defendant filed a *pro se* petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)), as well as a request for appointment of counsel. In her petition, she raised multiple issues, including "ineffective assistance of counsel" and "mental incompetency." Specifically,

she alleged, *inter alia*, that plea counsel "failed to investigate my mental health condition properly and actually didn't receive documentation of my psychiatric evaluation until two days after my guilty plea was entered." In support of this allegation, the defendant attached to her petition the report of psychologist Dr. Robert L. Heilbronner, which was stamped "RECEIVED JUN 11 2008." Unlike Dr. Cuneo's report, which by its own terms limits itself to the question of the defendant's fitness to stand trial, Dr. Heilbronner's report states that the results of the report "may be used to assist in the guilt/innocence phase, or in mitigation should a sentence of death be considered as punishment." Dr. Heilbronner's report states that the defendant "has a prominent mental health history that began when she was a young child and includes several psychiatric hospitalizations," and that Dr. Heilbronner believes the results of his evaluation are "reliable and valid" because the results suggest that on the dates he interviewed her, the defendant "did not attempt to feign or exaggerate cognitive impairment." Later in the report, Dr. Heilbronner states that the Structured Interview of Reported Symptoms (SIRS) "was also administered to assess the reliability and validity of her apparent psychiatric symptoms," and that "there was *no evidence* of any attempt to feign or malinger psychopathology at this moment." (Emphasis in original.) After detailing the various psychiatric symptoms described by the defendant, the report concludes that "mental health factors are the predominant issues in this case," and "are relevant to the commission of the crime(s) as well as mitigation." The report notes that the defendant's "history includes serious problems in the psychiatric domain including two psychiatric hospitalizations for suicidal ideation," and that "there is longstanding evidence of psychiatric and behavioral problems that play an important role in understanding [the defendant's] history and her mental status around the time in which the crimes were committed." The report also advises that "[i]t might be of use to have [the defendant] undergo additional medical and radiologic (PET scan or brain MRI) studies to ascertain whether there is any

4

objective evidence of disruption to other neurobiological functions as a result of developmental issues," and that "[p]sychiatric examination would also be helpful to assist in further differential diagnosis and to ascertain whether the voices she claims to hear represent actual auditory command hallucinations or some form of obsessive thinking." In further support of this allegation in her petition, the defendant alleged that postplea psychiatric evaluations of her at Dwight Correctional Center led to the following diagnoses: psychotic disorder, posttraumatic stress disorder, schizophrenia, mood disorder, and bipolar disorder, as well as a diagnosis of "mild mental retardation."

¶ 8     On January 2, 2013, the trial judge who took over the case following Judge Wharton's retirement from the trial court entered a two-sentence order in which the judge ruled that the defendant's petition "failed to state the [g]ist of a [c]onstitutional [d]eprecation [*sic*]" because "the record refutes the allegations" found in the petition. The defendant appealed, contending, *inter alia*, that the trial judge erred in summarily dismissing her *pro se* petition because the petition set forth the gist of a constitutional claim that guilty plea counsel was ineffective for failing to properly investigate the defendant's mental health condition before advising her to plead guilty. We agreed that summary dismissal was not appropriate, noting that at the time they advised her to plead guilty, plea counsel had not yet received Dr. Heilbronner's report explicitly addressing the issue of the defendant's sanity at the time of the alleged offenses. *People v. Hall*, 2014 IL App (5th) 130046-U, ¶ 16. We also agreed with the defendant that "it was Dr. Heilbronner's report, not Dr. Cuneo's, which if followed up on might have supported a possible insanity defense at trial, which in turn might have led to a finding of not guilty by reason of insanity, a crucial distinction that would not have been lost on capable and diligent plea counsel." *Id*. Therefore, we agreed with the defendant that at the first stage of proceedings, it was "arguable that plea counsel's performance fell below an objective standard of reasonableness and

5

that the defendant was prejudiced thereby." *Id*. We reversed the trial judge's summary dismissal of the defendant's *pro se* petition and remanded for further proceedings on the entire petition. *Id*. ¶ 18. Our ruling to remand the entire petition was based upon the fact that under Illinois Supreme Court precedent, if we find "that even one of [a] defendant's contentions presents the gist of a constitutional claim, the entire petition must be remanded for further proceedings, regardless of the merit of any other contentions presently contained therein, because the entire petition is subject to amendment by appointed counsel on remand." *Id*. ¶ 11 (citing *People v. Cathey*, 2012 IL 111746, ¶ 34).

¶ 9     On remand, because the trial judge who had summarily dismissed the petition was no longer a judge, the case was assigned to the Honorable Zina R. Cruse. In an order entered on March 20, 2015, she appointed postconviction counsel and gave him 45 days to determine whether the *pro se* petition should be amended. Postconviction counsel subsequently requested several extensions of time. Thereafter, on August 11, 2015, he requested an additional extension of time, noting that the amended petition was due on August 6, 2015, but that on August 3, 2015, he received a letter from the defendant, which he attached to his extension request. He contended that "[b]ecause of the problems detailed in [the defendant's] letter," he could not meet the existing deadline. Additional extensions of time were requested by postconviction counsel and granted.

¶ 10    On November 24, 2015, postconviction counsel filed an amended petition, as well as a certificate of compliance pursuant to Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). In his certificate of compliance, postconviction counsel stated that, *inter alia*, he had "consulted with [the defendant] to ascertain her contentions of deprivation of constitutional rights," and had "examined the entire *Report of the Proceedings of Trial*." (Emphasis in original.) In the petition, postconviction counsel raised claims of ineffective assistance of plea counsel, and of actual

6

innocence with regard to the three counts of first degree murder in case number 07-CF-415. Accompanying the petition were: (1) an "Attestation" signed by the defendant on August 27, 2015, in which she stated that she had "personal knowledge of the facts and statements alleged in the [amended petition] and that they are true and correct," (2) an affidavit from Dr. Cuneo, signed on November 19, 2015, in which he averred that although he "had discussions with [the defendant's plea counsel] about issues relating to [the defendant's] sanity or lack thereof at the time of the commission of the offenses," his "purpose was the establishing of an opinion as to her fitness to stand trial," (3) an affidavit from Dr. Heilbronner regarding his 2008 report, and (4) other supporting documentation discussed in more detail, as necessary, below.

¶ 11 On January 22, 2016, the State filed a motion to dismiss postconviction counsel's amended petition, contending that (1) an insanity defense is inconsistent with an actual innocence claim, and therefore the former claim must be limited to case number 06-CF-1612, (2) the defendant did not allege that her guilty pleas were coerced or involuntary, so her ineffective assistance of plea counsel claims must fail, and (3) her initial, *pro se* petition was untimely. After citing relevant case law, the State's motion contended, in paragraph 17, that postconviction counsel had "failed to demonstrate or even to allege in the amended petition that, but for her attorney's alleged ineffectiveness, she would have insisted on going to trial," and that he had "offered no evidence as to a *plausible* defense in either series of murders and offered no evidence in support of her bare allegation of actual innocence in the murders" in case number 07-CF-415. (Emphasis in original.) The State also posited that postconviction counsel had "failed to establish that [the defendant] was prejudiced by her attorneys' representation," and contended that the record contained overwhelming evidence that would have prevented the defendant from succeeding had she gone to trial in the two capital cases. The State noted that neither affidavit attached to the amended petition included "an opinion that [the] defendant was insane at the

7

time" of the alleged crimes. Included with the State's motion to dismiss was an additional affidavit from Dr. Cuneo, subscribed and sworn to on January 21, 2016, in which Dr. Cuneo stated that he wished to clarify his November 19, 2015, affidavit to note that during his "discussions as to the issue of sanity with [the defendant's plea counsel]," he "unequivocally opined that [the defendant] was not insane at the times of the alleged offenses," and that "a decision was made not to memorialize such opinion in a written report." The affidavit does not state that Dr. Cuneo ever actually examined the defendant for purposes of determining her sanity at the time of the alleged offenses, does not provide a factual basis for how he formed his opinion that she was not insane at those times, and does not attest that his opinion was within a reasonable degree of psychological certainty.

¶ 12    A hearing on the State's motion to dismiss was conducted on February 18, 2016, at which the parties presented arguments that were for the most part consistent with the filings and positions described above. Thereafter, Judge Cruse took the motion to dismiss under advisement. On March 3, 2016, the defendant, acting in a *pro se* capacity, filed a handwritten motion in which she asked Judge Cruse to remove postconviction counsel from her case, alleging that he "refused to take [her] input for the *** case" and "changed [the] amended petition after" she signed it. She further alleged that postconviction counsel "refused to explain the petition, the effects of the petition[,] and what is currently going on with the *** case with [her]" when she informed postconviction counsel that she did not "understand." She requested a different attorney to represent her, and stated that she had "been writing [to the] court since August asking them to intervene." On April 13, 2016, Judge Cruse entered an order in which she stated that the defendant had "raised issue of ineffective assistance of counsel." On April 25, 2016, Judge Cruse entered an additional order, in which she ruled that she would not continue to consider the motion to dismiss until she had investigated the defendant's complaint about postconviction

counsel. She noted she would do the latter by means of a "*Krankel* inquiry," in apparent reference to the procedure outlined by the Illinois Supreme Court in *People v. Krankel*, 102 Ill. 2d 181 (1984).

¶ 13    On May 16, 2016, Judge Cruse held her *Krankel* inquiry. She first asked the defendant to tell Judge Cruse more about the defendant's unhappiness with postconviction counsel. The defendant reiterated her written allegations, noting in particular that she told postconviction counsel what she "felt needed to be included in the amended petition, based off of what the appellate defenders told" her should be added. Judge Cruse asked the defendant what, specifically, she wanted included that was not included, to which the defendant replied, "suppression of statements." Judge Cruse then asked, "Was that ever an issue in the—," to which the State (apparently believing the partial question was addressed to it) replied, "I apologize, Your Honor. I—I don't know." Postconviction counsel subsequently stated that "[t]here was never a hearing on the suppression. The plea was entered prior to *** having any evidence." The defendant also contended, *inter alia*, that she wished for postconviction counsel to raise "coercion of being coerced to basically plead guilty. I was denied protective custody. He didn't raise that issue, either, after I requested it." She also contended that postconviction counsel removed support for the actual innocence claim because, postconviction counsel told her, the potential witness "did not want to help out with the case anymore." Judge Cruse asked the defendant several more questions, then asked the parties, "Did either of you want to ask [the defendant] any questions?"[1] The State answered, "No, Your Honor," as did postconviction counsel. She then asked postconviction counsel if he wished to reply. Postconviction counsel stated that he wanted Judge Cruse to know that he and the defendant "met on several occasions

---

[1]The Illinois Supreme Court has ruled that a preliminary *Krankel* inquiry is to be a "neutral and nonadversarial proceeding" at which the State's input, if there is any at all, should be *de minimis*. *People v. Jolly*, 2014 IL 117142, ¶ 38.

9

prior to the preparation of the petition," and "had discussions." He stated that despite "differences as to what she thought should be put in there," he prepared the amended petition "based upon what I thought ultimately was our understanding." He noted the "significant delay from the time of the preparation of the petition, and her signing of the petition and the filing of it," and that "a couple of changes were made, primarily because of Dr. Cuneo's affidavit." Postconviction counsel stated that he "thought that's what she was complaining about, the change." He stated that at the time the amended petition was filed, he "had not contacted—had not been successful contacting any of the independent witnesses," but that later he did make contact with the witness referred to by the defendant, and postconviction counsel and the witness "had the conversations that [the defendant] described." Judge Cruse took the matter under advisement.

¶ 14    On June 8, 2016, Judge Cruse entered orders in which she (1) without explanation, ruled that the defendant's claim of ineffective assistance of postconviction counsel was "unfounded," and/or had "no basis," and (2) noted that because the State, in its motion to dismiss, had raised timeliness as an issue, she was granting postconviction counsel "leave to amend" the petition within 30 days "to address the [defendant's] untimeliness (culpable negligence)" issue, to "comply" with Illinois Supreme Court Rule 651(c). Thereafter, postconviction counsel again was granted several extensions of time to comply with Judge Cruse's ruling. On August 15, 2016, postconviction counsel filed what he captioned as an "Amendment to Amended Post-Conviction Petition" (the Amendment). Therein, he asserted that the defendant's initial *pro se* petition included an actual innocence claim, and adequately asserted "lack of culpable negligence." He stated that "[f]or purposes of clarity," he would "reassert[ ] her lack of culpable negligence." He then alleged, *inter alia*, that the defendant (1) "[a]t all relevant times" between the date of her guilty plea and sentencing (June 9, 2008) and the date of the filing of the *pro se* petition

10

(November 13, 2012), "suffered from severe and debilitating mental illness, rendering her incapable of sufficient clarity to pursue legal remedies," (2) "received mental health treatment from June 2008 to March 2013," (3) "resided at mental health unit at Dwight from June 2008 to January 2012," (4) "[o]n multiple occasions *** was in protective custody or cottage restriction, denying her access to facilities and assistance necessary for filing her petition," and (5) "was frustrated in her efforts to obtain transcripts and records from either the court or her attorneys." Various handwritten documents, typed letters from plea counsel, and what appear to be medical/mental health records are filed in the record on appeal immediately after the Amendment, although none of the documents are recorded, on their face, as exhibits to the Amendment. There is no evidence in the record on appeal that postconviction counsel filed, along with the Amendment and any other documents filed therewith, a certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013).

¶ 15    On September 7, 2016, the State filed its "Second Motion to Dismiss." Therein, the State expressly "incorporate[d] all of the arguments previously made in its" previous motion to dismiss, noted that no affidavits other than that of the defendant accompanied the Amendment, and contended that nothing filed by the defendant defeated the State's untimeliness/culpable negligence claim. The State also contended the facts found in the documents filed after the Amendment belied her claims. A hearing on the State's second motion to dismiss was held on November 2, 2016. Thereafter, Judge Cruse again took the matter under advisement.

¶ 16    On January 30, 2017, Judge Cruse entered orders in which, ultimately, she ruled that with regard to ineffective assistance of plea counsel (1) the defendant's petitions were untimely, and the "evidence" showed "that the delay was due to [the defendant's] culpable negligence," and (2) timeliness notwithstanding, "considering the evidence/affidavits," the claims failed. She also ruled that with regard to actual innocence, "[n]o showing was made and no admissible or

11

credible argument was made to support the claim." Accordingly, she granted the State's motion to dismiss. This timely appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, the defendant raises two issues, contending: (1) postconviction counsel failed to provide the defendant with the reasonable level of assistance of counsel required by the Act, because he failed to make necessary amendments to her petition, failed to include available support, and failed "to re-frame a potentially meritorious claim," and (2) in the alternative, this court should remand for a third-stage evidentiary hearing because the record on appeal "does not rebut the allegation that plea counsel prematurely advised [the defendant] to plead guilty before receiving an expert report questioning her sanity at the time of the offense." We begin our analysis with an overview of some of the general principles of law applicable at the second stage of proceedings under the Act. When, at the second stage of proceedings, the State has filed a motion to dismiss a petition, the trial court is concerned merely with determining whether the petition's allegations sufficiently demonstrate a constitutional infirmity that would necessitate relief under the Act. *People v. Coleman*, 183 Ill. 2d 366, 380 (1998). At this stage, "the defendant bears the burden of making a substantial showing of a constitutional violation" and "all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). The trial court reviews the petition's factual sufficiency as well as its legal sufficiency in light of the trial court record and applicable law. *People v. Alberts*, 383 Ill. App. 3d 374, 377 (2008). At a dismissal hearing, the trial court is prohibited from engaging in any fact finding. *Coleman*, 183 Ill. 2d at 380-81. Thus, the dismissal of a postconviction petition at the second stage is warranted only when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a

12

constitutional violation. *Id.* at 382. We review *de novo* the trial court's dismissal of a postconviction petition at the second stage. *Pendleton*, 223 Ill. 2d at 473.

¶ 19 We now examine in detail the defendant's first contention on appeal: that postconviction counsel failed to provide the defendant with the reasonable level of assistance of counsel required by the Act, because he failed to make necessary amendments to her petition, failed to include available support, and failed "to re-frame a potentially meritorious claim." Specifically, the defendant contends postconviction counsel failed to: (1) amend the petition "to allege prejudice when attacking a guilty plea even after the State noted the error," (2) attach to the petition "an available letter which showed that [the defendant] did not see the report indicating that an insanity defense was not foreclosed until after her plea," (3) provide "available support when alleging a lack of culpable negligence," and (4) include, or explain the omission of, "a potentially viable claim from the *pro se* petition." The defendant urges this court to remand this cause "for further second-stage proceedings with new counsel."

¶ 20 As the defendant correctly notes, the Act provides for a reasonable level of assistance from appointed counsel. See, *e.g.*, *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). A reasonable level of assistance includes, *inter alia*, "attempting to overcome procedural bars, including timeliness, that will result in dismissal of a petition if not rebutted." *Id.* at 44. As the defendant acknowledges, a certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) creates a rebuttable presumption that reasonable assistance was provided. See, *e.g.*, *id.* at 52. However, that presumption may be rebutted by the record. *People v. Russell*, 2016 IL App (3d) 140386, ¶ 10. "Whether postconviction counsel provided a reasonable level of assistance in compliance with Supreme Court Rule 651(c) is reviewed *de novo*." *Id.* This court has held that if postconviction counsel fails to make a "routine" amendment, and if this court concludes counsel's failure "contributed directly to the dismissal of the petition without an evidentiary

13

hearing," then "the presumption of reasonable assistance created by the filing of the certificate of compliance with Rule 651(c)" is rebutted. *Id.* ¶ 11. Moreover, "a defendant is not required to make a positive showing that his counsel's failure to comply with Rule 651(c) caused prejudice." *Id.* ¶ 12. To the contrary, if "postconviction counsel failed to fulfill the duties of Rule 651(c), remand is required, regardless of whether the claims raised in the petition had merit." *Id.* That is the case because "[p]ostconviction counsel's noncompliance with Rule 651(c) may not be excused on the basis of harmless error." *Id.*; see also *People v. Turner*, 187 Ill. 2d 406, 416 (1999) (reviewing court "will not speculate whether the trial court would have dismissed the petition without an evidentiary hearing if counsel had adequately performed his duties under Rule 651(c)"). The proper remedy is to reverse the judgment dismissing the postconviction petition and to remand to the circuit court with directions to allow the defendant the opportunity to replead the postconviction petition with the assistance of new counsel. *Russell*, 2016 IL App (3d) 140386, ¶ 12.

¶ 21    The defendant also correctly notes that to prevail on the ineffective assistance of plea counsel claim raised in her petition, she was required to demonstrate, *inter alia*, that she was prejudiced by the ineffective assistance, which in this context and at this stage of proceedings required her to allege both that (1) absent the errors of counsel, she would have pleaded not guilty and insisted on going to trial, and (2) there existed a claim of innocence or a plausible defense she could have raised at trial. See, *e.g.*, *People v. Hall*, 217 Ill. 2d 324, 335-36 (2005). However, postconviction counsel did not amend the petition to make such allegations. We believe such an amendment can be classified as a "routine" one for purposes of conducting an analysis pursuant to *People v. Russell*, 2016 IL App (3d) 140386, but even if such an amendment were not, under normal circumstances, a "routine" one, in this case the State pointed the error out to postconviction counsel in paragraph 17 of the State's first motion to dismiss, contending that

postconviction counsel had "failed to demonstrate or even to allege in the amended petition that, but for her attorney's alleged ineffectiveness, she would have insisted on going to trial," and that he had "offered no evidence as to a *plausible* defense in either series of murders and offered no evidence in support of her bare allegation of actual innocence in the murders" in case number 07-CF-415. (Emphasis in original.)

¶ 22 Thereafter, Judge Cruse gave postconviction counsel the opportunity to further amend the petition. Although in her June 8, 2016, order, Judge Cruse specifically stated that the opportunity was so postconviction counsel could address the State's timeliness argument, she further stated it was so he could comply with Rule 651(c). Nevertheless, postconviction counsel made no effort to cure the errors pointed out by the State in paragraph 17 of its motion to dismiss, even though curing those errors was necessary for him to in fact comply with Rule 651(c). Postconviction counsel's inaction is particularly concerning in light of the fact that postconviction counsel's filings demonstrate that he knew of the existence of Dr. Heilbronner's report, a document which supports the allegation—taken as true at this point in the proceedings (see, *e.g.*, *Hall*, 217 Ill. 2d at 336 (credibility determinations are not made at the second stage of proceedings; State assumes the truth of defendant's factual allegations by moving to dismiss petition))—that an insanity defense was not in fact foreclosed and could have been pursued at trial. This, in turn, supports the allegation—also taken as true at this point in the proceedings—that plea counsel were ineffective to the extent they misrepresented to the defendant that she had no viable defenses at trial and should plead guilty, and would have provided the support postconviction counsel needed to make the required allegation that there existed a plausible defense the defendant could have raised at trial. We agree with the defendant that this error of postconviction counsel alone demonstrates unreasonable assistance of counsel in contravention of the requirements of Rule 651(c), and therefore requires this court to reverse Judge Cruse's order dismissing the

postconviction petition, and to remand to the circuit court with directions to allow the defendant the opportunity to replead the postconviction petition with the assistance of new counsel.

¶ 23    We also agree that postconviction counsel's other errors compounded the petition's problems at the trial court level, demonstrate additional unreasonable assistance of counsel in contravention of the requirements of Rule 651(c), and further justify remand for further second-stage proceedings with new counsel. As the defendant points out, postconviction counsel failed to attach to the amended petition a 2009 letter to the defendant from one of her plea counsel in which plea counsel acknowledged, and explained why, he did not provide her with a copy of Dr. Heilbronner's report until more than a year after she entered her plea of guilty—a letter that supported her allegation that she did not know, when she entered her plea, that an insanity defense was not foreclosed. With regard to the State's timeliness argument, postconviction counsel could have used the same letter as supplementary support for his claim of a lack of culpable negligence on the part of the defendant, but postconviction counsel failed to do so, instead including only a letter from July 2012, which, as the defendant notes, left "the impression that [the defendant] waited until after her petition was due to seek materials for her petition." Also with regard to the State's timeliness argument,  postconviction counsel failed to include an affidavit from the defendant in support of her allegations regarding protective custody and cottage restrictions, instead providing only an unsworn statement from the defendant. In light of these failings, we cannot overlook the defendant's additional contention that postconviction counsel failed to shape and include in the amended petition the defendant's *pro se* claim that some of her statements to the police were subject to suppression, that she informed plea counsel of this, and that they advised her to plead guilty without first investigating her claim and attempting to have her statements suppressed. Furthermore, postconviction counsel's lack of reasonable assistance to the defendant is also demonstrated by the fact that he failed, in the

amended petition, to allege that as a result of plea counsel's ineffective assistance, the defendant's guilty plea was not knowing and voluntary—an allegation that was necessary to advance the defendant's claim to an evidentiary hearing (see, *e.g.*, *Hall*, 217 Ill. 2d at 334-35), and that clearly constituted a "routine" amendment, particularly in light of the fact that the defendant, in her initial, *pro se* petition, contended that her guilty plea was coerced, and in light of the fact that the State, in its first motion to dismiss, also pointed out postconviction counsel's infirmity, which of course further suggested the concomitant need for an amendment.

¶ 24    We must note as well that, as described above, postconviction counsel made these errors even after being given multiple extensions of time to make his filings in this case—extensions that presumably were granted to him so he could give the defendant's case the attention it deserved. Postconviction counsel's failure to file a new certificate of compliance with Rule 651(c) when he filed the Amendment—along with the fact that in his original certificate he claimed he had "examined the entire *Report of the Proceedings of Trial*" in a case in which there was no trial, but instead was a common law record containing transcripts of various proceedings but also voluminous relevant documents that were not transcripts and could not accurately be said to relate to any purported "*Report of the Proceedings of Trial*"—does nothing to increase our confidence that postconviction counsel rendered a reasonable level of assistance to the defendant in this case.

¶ 25    The State's position on appeal merits brief commentary as well. The State first argues that Judge Cruse did not err in dismissing the amended petition and the Amendment on timeliness grounds. The problem with this argument is that it is premised on the assumption that the defendant received reasonable assistance of counsel (although, we note, even the State alludes to postconviction counsel's unreasonable assistance to the defendant when the State contends that the "defendant did not even provide her own affidavit" in support of her timeliness

17

defense), and on the assumption that the arguments put forward by postconviction counsel were the best arguments the defendant could possibly muster on the question of timeliness. As described in detail above, postconviction counsel did not provide reasonable assistance of counsel and we decline to speculate with regard to what arguments—and factual support therefor—will be brought forward on the issue of timeliness by new counsel on remand. See *People v. Russell*, 2016 IL App (3d) 140386, ¶ 12; see also *People v. Turner*, 187 Ill. 2d 406, 416 (1999) (reviewing court "will not speculate whether the trial court would have dismissed the petition without an evidentiary hearing if counsel had adequately performed his duties under Rule 651(c)"). The other arguments raised by the State are more appropriate to the defense of an order rendered by the trial court in the State's favor following the full development of the facts via an evidentiary hearing. At this point, postconviction counsel's failure to provide reasonable assistance of counsel has made it impossible to determine whether an evidentiary hearing is warranted, let alone what the facts adduced at such a hearing would be and to what result they would lead the trial court. In short, at this point, the remainder of the State's arguments are premature.

¶ 26    Based upon the foregoing, we need not reach the defendant's alternative contention: that this court should remand for a third-stage evidentiary hearing because the record on appeal "does not rebut the allegation that plea counsel prematurely advised [the defendant] to plead guilty before receiving an expert report questioning her sanity at the time of the offense."

¶ 27                                     III. CONCLUSION

¶ 28    For the above reasons, we reverse the dismissal, at the second stage of proceedings, of the defendant's amended petition for postconviction relief, and remand to the circuit court with directions to allow the defendant the opportunity to replead the postconviction petition with the assistance of new counsel.

18

¶ 29    Reversed and remanded with directions.